**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**



|  |  |
|---|---|
| GERARD NGUEDI,<br>*Pro se*<br><br>Plaintiff,<br><br>v.<br><br>THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURT (The AO), AND GENERAL DYNAMICS INFORMATION TECHNOLOGY (GDIT)<br><br><br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>) Case: 1:23–cv–02965<br>) Assigned To : Unassigned<br>) Assign. Date : 10/2/2023 Description:<br>) Pro se. Gen. Civ. (H–Deck)<br>)<br>)<br>)<br>) |

**RECEIVED**
**Mail Room**

OCT – 3 2023

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**COMPLAINT**

Plaintiff, GERARD NGUEDI, alleges as follows:

**RECEIVED**
**Mail Room**

OCT – 2 2023

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000-e, *et seq.*, Title 8, and any other cause of action which can be inferred from the facts set forth herein.
2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and aforementioned statutory provisions.
3. Venue is proper pursuant to 28 U.S.C. § 1391.
4. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC").

## PARTIES

5. Plaintiff, GERARD NGUEDI ("Plaintiff"), was a resident of Glenn Dale, MD during the events described below and still resides at the same address.

6. Defendants, the Administrative Office of the US Courts (The AO) was and is still located: 1 Columbus Circle Northeast, Washington, DC 20002, And General Dynamics Information

1

Technologies (GDIT) was and is still located: 3150 Fairview Park Drive, Falls Church, Virginia 22042.

## **FACTS**

1. The Plaintiff is the Second Coming Of Jesus Christ, Founder and CEO of FaithSMagnet, LLC, a Maryland based Veterans Services Organization; The inventor of the FaithSMagnet Mental TAP Program "Be The Best Version of You"; and an IT Project Manager/Scrum Master Advisor, with extensive IT work experiences as a consultant and an employee, in fortune 100 companies like HBO, as well as federal Government Agencies like the GSA.

2. On January 30th , 2023, the Plaintiff started a permanent position with GDIT, to support Task Orders 11, 3, 4 and 6 on a contract with the AO, where Plaintiff was a manager in the United States Courts in the Judiciary Space (JSPACE/JRENT) initiative for the Administrative Systems Office (ASO) and Administrative Office of the US Courts.

3. JSPACE is an Integrated Workplace Management System (IWMS) which is on pace to replace the US Courts legacy systems JRENT in 2025, and built and hosted using an IBM integrated platform called TRIRIGA.

4. From day 1, Plaintiff was subjected to harassments and complications that made Plaintiff uncomfortable as I was asked to submit paper work multiple times and HR Representative Yanci Gonzalez (703.995.1904 / yanci.gonzalez@gdit.com) had to track me down to collect documents already submitted, when Plaintiff was in the middle of a conference at the AO. Documents submitted to HR miraculously disappeared and had to be resubmitted.

5. Plaintiff healthcare and dental coverage were also sabotaged, and replaced by other options chosen by HR and they just sent what they wanted to Plaintiff, which was finally corrected after battling HR, they were trying to choose my healthcare for me and force me to pay for something I don't want, just because I was working there.

6. The first week, as a Black manager, plaintiff noticed his salary was more than $10,000 less than the average salary of his own team, as the only Black employee on my team, and a manager, even the people reporting under me were making $10,000 more on average.

7. Plaintiff realized that he was also making thousands of dollars less than his predecessor who was not African American.

8. On 07/11/23 during a mid-year performance review, Plaintiff's GDIT manager Bob Bassinger congratulated Plaintiff on doing a great job, telling Plaintiff the client is satisfied with plaintiff's performances, and that plaintiff is doing a very good job.

9. This was also consistent with the feedback Plaintiff was getting from coworkers both from the GDIT side and from the Government site.

10. Plaintiff thanked Mr. Bassinger and then kindly proceeded to inquire about the salary adjustment, and then politely reminded to Mr. Bassinger that Plaintiff has been underpaid, so that Plaintiff can be properly compensated for his MBA, 17 years of IT experience and good work performances plaintiff was doing as a GDIT Employee.

11. Mr. Bassinger acknowledged Plaintiff's request and said he was going to talk with "the client" and get back to Plaintiff within a few days.

12. Plaintiff was kept from controlling his own meetings during the whole time plaintiff was not able to take ownership of most of his own daily stand-up meetings with the team, since Plaintiff was ask by the AO to keep the name of his predecessor, for more than 6 months, like Plaintiff was not even there.

13. Furthermore, Paul Pollard, a white man, was acting as Project Manager but he was not really active in any of plaintiffs' core meetings, but yet somehow he was controlling key meetings, to the point that the plaintiff couldn't invite Mr. Troy Pomroy, Plaintiff's official manager from the Government side, to his last meeting as you can see in EXHIBIT A.

13. All the plaintiff's recurring/daily meetings were still under the name of plaintiff's predecessor, and the AO pressured the plaintiff to keep things this way. As a new team member, plaintiff refused to make it an issue.

14. The plaintiff was working in a team in which plaintiff couldn't understand if they were trying to sabotage or work with the plaintiff; Because the plaintiff couldn't understand why they would hire an expert to diminish them, while using public Government resources and positions.

15. Furthermore, Thomas Pedicone, a former GDIT employee who became an employee of the AO, decided to take ownership of the plaintiff's most important monthly meeting, the Internal Project Review or IPR meeting, conspiring with the AO to take away plaintiff's key role and job functions, in order to embarrass the plaintiff and indirectly take over parts of the plaintiff's role and maybe even take credit for plaintiff's accomplishments, thinking they can just take advantage of plaintiff, since they are "the client."

16. Now the plaintiff has at least two white men who are not managers like the plaintiff, but yet they are obsessed with doing the work the plaintiff is supposed to be doing, and actually get promoted by the AO.

17. Thomas Pedicone and Keira Unterzuber and others also pressured the plaintiff to not report major security breaches that took place in May or June of 2023 when a virus was found in the system, and that same week there were complaints from a user who saw Occupancy Agreements being updated without her knowledge.

18. Hackers infiltrated JSPACE, and the AO pressured plaintiff to NOT report them during the IPR meeting. The AO Security team was not even aware of it, only IBM knew and this is completely illegal and contrary to the NIST standards, which is the Law that regulates how Cloud-based applications owned by the Federal Government need to be secured in the Cloud.

19. Thomas Pedicone, who is now an AO full-time employee and Product Owner of the platform that is being built, suddenly became a Product Manager, even if he was in fact an engineer.

20. On 7/19/23, the plaintiff's GDIT manager Bob Bassinger called the plaintiff on a meeting with HR, and thought the plaintiff's salary adjustment issue was finally going to be addressed, but instead plaintiff was told he was going to be removed from his position and moved to "internal mobility" because: "the client wants to move in another direction." The plaintiff accepted that decision without asking any more questions, and told his team about it and that plaintiff's last day was set to 08/04/2023.

21. On 7/20/23, the very next day, during an important meeting where the plaintiff presented an analysis he was working on, which exposed major issues and helped the team have a vision for the entire JSPACE/JRENT initiative for the first time, as Chris Smith, "the Client" admitted at the end of the meeting. A link to the video recording of that meeting can be found in Exhibit A.

22. During this recorded meeting, just one day after being demoted/fired because "the Client," Christopher Smith, wanted to go in another direction, when the same client just told the plaintiff that the work the plaintiff was sharing on video during the meeting was going to: "guide the team going forward"; which proves that Mr. Bassinger was lying to the plaintiff, since the client was not trying to go in another direction, as Mr. Bassinger was claiming, and the key point was recorded on video, and the direct link to that JSPACE SharePoint Backlog Grooming video link is available in the email in Exhibit A.

23. This meeting was recorded and plaintiff believes this to be important because during this meeting, unidentified hackers inside the AO were able to delete two tabs in an Excel file that the plaintiff sent to all meeting participants prior to the meeting, and there is the video

4

recording of everyone on the call realizing the plaintiff's file was hacked and altered, but they didn't want to talk about it, see Exhibit B.

24. After telling the team and coworkers goodbye, even if I was unable to explain what was happening and why I was being treated like this, and humiliated one more time, the plaintiff realized that in fact he was the victim of racism, racial profiling, as the plaintiff was diminished, humiliated, pushed aside, lied to, sabotaged, and manipulated the whole time, as they were all trying to take advantage of the plaintiff and the plaintiff's career, and tried to present the plaintiff as someone who is incompetent when, in fact, the plaintiff brought a vision to the whole JSPACE/JRENT initiate for the first time, with a simple Gap Analysis.

25. The JSPACE/JRENT (the TRIRIGA implementation) is a train wreck, and it is removing people from the Judiciary, so that only a few corporations like IBM, Vanguard, Blackrock and all of the board members of all the special interests behind IBM and the fake federal reserve can access to the system to control of the Judiciary Space, or JSPACE.

26. The AO is not following NIST Standards, with the way things are going in the JSPACE/JRENT project, these corporations and many others could have total control from behind the scenes. TRIRIGA is rigged, this environment is not safe, as I told my Government manager Troy Pomroy in an email (Exhibit A), and I believe AO employees may be covering up for hackers and malicious attacks.

27. I hope this raises red flags and gets thoroughly investigated because the risk of "special interest" controlling this important Federal Government function is very real.

## COUNT ONE

## SALARY DISCRIMINATION

14. Plaintiff repeats, reiterates, and re-alleges each and every allegation made in the above paragraphs of this complaint. Title VII of the Civil Rights Act of 1964 provides that;
   a. It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin, or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

5

15. As described above, Defendant has mistreated and discriminated against Plaintiff due to his race and national origin by subjecting Plaintiff to adverse employment actions and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

## SECOND COUNT FOR ACTION

## RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1981

26. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

27. Defendant GDIT and The AO conspired to discriminate, harass and fire plaintiff-based race, and racial discrimination.

28. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983,

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

28. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

29. The acts of all the Defendants on this case were intentional and purposely aimed at inflicting emotional distress and harass the Plaintiff.

30. Defendants' conduct throughout the course of Plaintiff's employment was extreme and outrageous, including but not limited to discriminatory acts, harassment, and retaliation, as described in this complaint.

31. Defendants' extreme and outrageous conduct was intentional or reckless, designed to cause emotional distress to Plaintiff.

32. Plaintiff suffered severe emotional distress as a direct and proximate result of Defendants' extreme and outrageous conduct.

33. While federal employment discrimination laws do not directly address IIED claims, Defendants' conduct, which forms the basis for the employment discrimination claims, contributed to the severe emotional distress experienced by Plaintiff.

34. Plaintiff seeks damages for the intentional infliction of emotional distress, including compensation for emotional distress, mental anguish, and any other appropriate relief deemed just and equitable by the Court.

**COUNT FOUR**
**PAY DISCRIMINATION**

35. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

**36.** By the conduct and actions described above, Defendants purposefully and intentionally conspired to affect Plaintiff performances and tried to destroy plaintiffs' reputation as an Influencer, a leader and the creator of a Personal and Career Development Program. Plaintiff attacks were also targeting his company, and his brand.

**COUNT FIVE**

**RETALIATION IN VIOLATION OF TITLE VII**

33. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

34. After Plaintiff made inquiries and requests for salary adjustments, which were well within his rights under Title VII, Defendants retaliated against him by demoting him and constantly intimidating him before his colleagues.

35. Such actions by Defendants, including but not limited to the demotion and termination of Plaintiff, were taken in retaliation for Plaintiff's exercise of his rights under Title VII and constitute unlawful retaliation in violation of 42 U.S.C. § 2000e-3.

36. Plaintiff seeks damages and injunctive relief for retaliation in violation of Title VII.

## COUNT SIX

### BREACH OF EMPLOYMENT CONTRACT

37. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

38. Plaintiff and Defendants entered into an employment contract, either express or implied, when Plaintiff accepted the position with GDIT to work on the contract with The AO.

39. Defendants breached the employment contract by failing to provide Plaintiff with the terms, conditions, and compensation as promised or implied in the employment offer and contract.

40. As a result of Defendants' breach of contract, Plaintiff has suffered financial losses, emotional distress, and damage to his professional reputation.

41. Plaintiff seeks damages for breach of contract, including compensation as promised, consequential damages, and any other appropriate relief as determined by the Court.

## COUNT SEVEN

### BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

42. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

43. At all times relevant to this litigation, Defendant was in a contractual relationship with the plaintiff and owed a duty to the plaintiff to act in good faith and deal fairly with him

44. Such acts and omissions leading to the Defendant's breach of their duty to deal in good faith and fairly with the plaintiff were the actual and proximate cause of harm to the plaintiff.

45. Defendants conduct was outrageous, with their acts being done with malice or bad motives or reckless indifference to the interests of the plaintiff.

8

## COUNT EIGHT

## D.C. Human Rights Act" (DCHRA). —DISCRIMINATION AND RETALIATION ON THE BASIS OF RACE IDENTITY

46. The plaintiff re-alleges the foregoing paragraphs as though fully set forth herein.

47. The plaintiff is a member of a protected class on the basis of race

48. The plaintiff, in all respects, was performing his job in a manner that was consistent with the defendant's legitimate business expectations.

49. The defendant discriminated against the plaintiff as described above, including but not limited to harassing him, subjecting him to a hostile work environment, denying him promotions and terminating his contract before prematurely.

50. The defendant also retaliated against the plaintiff as described above.

51. The defendants' actions were taken with a willful and wanton disregard of the plaintiff's rights under the D.C. Human Rights Act" (DCHRA).

52. As a direct and proximate result of said unlawful employment practices and in disregard of the plaintiffs' rights and sensibilities, the plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

  a. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

  b. Economic losses on all claims allowed by law, in an amount to be determined at trial;

  c. Special damages in an amount to be determined at trial;

  d. Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

9

e. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, 36 including expert witness fees, on all claims allowed by law;

f. Pre- and post-judgment interest at the lawful rate; and,

g. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

PLAINTIFF REQUESTS A TRIAL BY JURY.

Signature:

Date: Wednesday, September 27th, 2023
Name: Gerard Nguedi, Pro Se
10037 Locust St.
Glenn Dale, MD
Cell: 646 744 7802

10

(DO NOT WRITE ON SAMPLE FORM)
CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by first-class mail, postage prepaid, on the __28__ day of _September_, 20_23_, upon:

The AO
Defendant The Administrative Office of the US Courts (The AO)
1 Columbus Circle Northeast, Washington, DC 20002,

Gerard
Nguedi