## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GERARD NGUEDI,<br><br>        *Plaintiff*,<br><br>v.<br><br>ADMINISTRATIVE OFFICE OF THE<br>UNITED STATES COURT, *et al.*,<br><br>        *Defendants.* | Civil Action No. 23-2965 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Gerard Nguedi, proceeding *pro se*, brings this action against the Administrative Office of the U.S. Courts ("Administrative Office") and General Dynamics Information Technology ("General Dynamics"). He alleges, among other things, that during his employment with General Dynamics he suffered racial discrimination and a hostile work environment. Although General Dynamics has answered the complaint, Dkt. 18, the Administrative Office moved to dismiss on multiple grounds, including Plaintiff's failure to effect service, Dkt. 17. The Court agreed but granted Plaintiff additional time to effect service, while reserving judgment on the Administrative Office's remaining arguments. Dkt. 32. After Plaintiff filed proof of service, as required by the Court's order, the Administrative Office renewed its motion to dismiss on those remaining grounds. That motion is now before the Court, Dkt. 35, as is Plaintiff's motion for a hearing, Dkt. 44.

For the reasons explained below, the Court will **GRANT** the Administrative Office's motion to dismiss for failure to state a claim and will **DENY** Plaintiff's motion for a hearing as moot.

# I. BACKGROUND

For the purposes of evaluating the Administrative Office's motion to dismiss, the following facts, taken from Plaintiff's complaint, are accepted as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citing *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Plaintiff was hired for "a permanent position" with General Dynamics in January 2023. Dkt. 1 at 2 (Compl. ¶ 2). He was employed as a manager and supported IT-related projects on a contract with the Administrative Office. *Id.* Plaintiff alleges that from the beginning of his employment he was subjected to "harassments and complications" when he was asked to submit the same paperwork multiple times because it would "miraculously disappear[]." *Id.* (Compl. ¶ 4). He further alleges that the General Dynamics human resources department ("HR") "sabotaged" his healthcare and dental coverage by forcing him to pay for options he did not want. *Id.* (Compl. ¶ 5). He also alleges that he was the only Black employee on his team, that his salary was "$10,000 less than the average salary of his own team," and that even employees who reported to him were making, on average, $10,000 more than him. *Id.* (Compl. ¶ 6). Plaintiff alleges that he also "realized that he was making thousands of dollars less than his predecessor who was not African American." *Id.* (Compl. ¶ 7). After a positive mid-year performance review, he took this issue up with his manager at General Dynamics, Bob Bassinger, and asked for a "salary adjustment." *Id.* at 2–3 (Compl. ¶¶ 8, 10). Bassinger said that he would speak with the Administrative Office and get back to Plaintiff in a few days. *Id.* at 3 (Compl. ¶ 11).

Plaintiff also alleges that he "was kept from controlling his own meetings." *Id.* (Compl. ¶ 12). Paul Pollard, a white Project Manager, "control[led] key meetings," even though "he was

not really active in any of [Plaintiff's] core meetings." *Id.* (Compl. ¶ 13). As a result, Plaintiff

could not invite his "official manager from the Government side[] to his last meeting." *Id.* The

Administrative Office also pressured Plaintiff to conduct his "recurring/daily meetings under the

name of [his] predecessor." *Id.* (Compl. ¶¶ 12–13).

    According to Plaintiff, another white man, Thomas Pedicone, a former General Dynamics

employee who became an employee of the Administrative Office, "decided to take ownership of

[P]laintiff's most important monthly meeting, the Internal Project Review . . . meeting,

conspiring with the [Administrative Office] to take away [P]laintiff's key role and job functions,

in order to embarrass [him]." *Id.* (Compl. ¶ 15). He further alleges that on certain occasions,

Pedicone, Keira Unterzuber, and other Administrative Office employees pressured him to not

report certain "major security breaches," including computer viruses and infiltrations by hackers.

*Id.* at 4 (Compl. ¶ 17–18).

    On July 19, 2023, Bassinger (Plaintiff's manager at General Dynamics) called Plaintiff

into a meeting with HR. *Id.* (Compl. ¶ 20). At that meeting, Plaintiff was informed that he was

going to be removed from his position and moved to "internal mobility" because "the client

want[ed] to move in another direction." *Id.* According to Plaintiff, however, Bassinger's reason

for removing him was false, and that, in fact, the next day Christopher Smith, a client

representative, informed Plaintiff that the work he had done was going to "guide the team

forward." *Id.* (Compl. ¶ 22). He alleges: "Mr. Bassinger was lying to the [P]laintiff, since the

client was not trying to go in another direction." *Id.* Eventually, Plaintiff came to believe that he

was "the victim of racism," *id.* at 5 (Compl. ¶ 24), and he filed this action against General

Dynamics and the Administrative Office.

General Dynamics waived service, appeared, and answered.  Dkt. 18.  The

Administrative Office, in contrast, moved to dismiss Plaintiff's claims against it for lack of

jurisdiction, insufficient service of process, and failure to state a claim.  Dkt. 17.  The

Administrative Office argued that Plaintiff's service was defective because he had mailed it

himself in violation of Federal Rule of Civil Procedure 4(m).  The Court agreed, but rather than

dismiss the action, the Court exercised its discretion to "direct that service be effected within a

specified time."  Dkt. 32 at 3.  The Court, accordingly, denied the Administrative Office's

motion without prejudice and gave Plaintiff 45 days to effect service.  The Court further

explained, however, that the Administrative Office would "be free to renew its [remaining]

arguments" after Plaintiff effected service.  *Id.* at 4.

Plaintiff attempted to effect service within 45 days, as required by the Court's order.  *See*

Dkt. 33, Dkt. 34.  The Administrative Office, in turn, renewed its motion to dismiss.  Dkt. 35.

The Administrative Office first argued that Plaintiff's second attempt at service was, once again,

insufficient—this time because, although he "served the Attorney General and the U.S. Attorney

through a person other than himself," he did properly serve "the agency itself."  *Id.* at 2.  In the

alternative, the Administrative Office renewed its contentions that Plaintiff's "claims warrant

dismissal for lack of subject-matter jurisdiction and failure to state a claim."  Dkt. 35 at 3 (cross-

referencing Dkt. 17).

After the Administrative Office filed its renewed motion (and after Plaintiff's 45-day

window to effect service had expired), Plaintiff attempted service a third time.  The third time

was the charm, and Plaintiff successfully served the Administrative Office.  *See* Dkt. 41 at 1.

Despite that success, the Administrative Office continues to ask the Court to dismiss Plaintiff's

complaint because he failed to "comply with this Court's directive to effect service of process on

Defendant within forty-five days of its order." *Id.* For reasons similar to those that dissuaded the Court from granting the Administrative Office's first motion to dismiss for insufficient service of process, *see* Dkt. 32 at 3, the Court again declines to impose the draconian penalty of dismissing the case entirely. Plaintiff is proceeding *pro se* and has made a good faith and diligent effort to comply with Rule 4; the Administrative Office has now been served, *see* Dkt. 39-1; and the federal courts favor resolving cases, when possible, on the merits.

The Court will, accordingly, reach the Administrative Office's alternative arguments for dismissal and consider whether Plaintiff has established that this Court has subject-matter jurisdiction over each of his claims and, if so, whether he has stated a claim upon which relief can be granted.

## II. LEGAL STANDARD

Although pleadings by *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), they still must comply with the Federal Rules of Civil Procedure, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

At the motion to dismiss stage, a challenge to the court's jurisdiction "may take one of two forms." *Hale v. United States*, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). First, a Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction." *Id.* A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction. *See Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006); *see also Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). In this posture, the Court must accept the factual allegations of the complaint as true, Erby, 424 F. Supp. 2d at 182, but must also assess the "plausibility" of the plaintiff's jurisdictional allegations in

light of the relevant context and the Court's "judicial experience and common sense," *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Alternatively, "a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, the court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may also move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A court must consider the whole complaint, accepting factual allegations as true and construing all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  But a court need not "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).  A court may consider "any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

For *pro se* litigants, the D.C. Circuit has instructed that a district court should "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to

dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *see also Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). Applying this principle, the Court will review Plaintiff's complaint, Dkt. 1, in light of his other filings. *See Hylton v. Watt*, 2018 WL 4374923, at *3 (D.D.C. Sept. 13, 2018). These additional materials, however, may be used only as interpretive aids; they may not substitute for a well-pleaded complaint. The complaint itself must, therefore, still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ho*, 106 F.4th at 50 (internal citations and quotation marks omitted).

### III. ANALYSIS

Plaintiff asserts several claims against both the Administrative Office and General Dynamics. He asserts Title VII claims (Counts I, IV, and V), Equal Protection Clause and Section 1981 claims (Count II), a District of Columbia Human Rights Act ("DCHRA") claim (Count VIII), breach of contract claims (Counts VI and VII), and an intentional infliction of emotional distress claim (Count III). For the reasons explained below, the Court concludes that each of Plaintiff's claims against the Administrative Office fails, either for lack of subject-matter jurisdiction or for failure to state a claim upon which relief may be granted.

### A. Title VII Claims (Counts I, IV, V)

Title VII broadly prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3. Title VII, however, "covers only those individuals in a direct employment relationship with a government employer." *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016) (citation and alteration omitted). "Individuals who are independent contractors or those not directly employed by such an employer are unprotected." *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979). In the case of government contracts,

however, employees can sometimes qualify as joint employees of both the contractor and the government agency. *See Al-Saffy*, 827 F.3d at 96.

Title VII offers no meaningful definition of "employee" or "employer." *See, e.g.*, *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006). The Supreme Court, accordingly, has instructed that courts should look to "traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (construing identical definition of "employee" under ERISA). In drawing the line between "independent contractors" and "employees," the D.C. Circuit has applied a multi-factor and non-exhaustive test. *Spirides*, 613 F.2d at 831. First and foremost, courts must consider "the employer's right to control the 'means and manner' of the worker's performance," including both the "result to be achieved" and "the details by which that result is achieved." *Id.* at 831–32 (citation omitted). Beyond this, *Spirides* identified eleven other factors—ranging from the "kind of occupation" and "skill" required to who "furnishes the equipment used and the place of work" to "whether the worker accumulates retirement benefits" and "whether the 'employer' pays social security taxes"—all of which must be considered, along with any other circumstances, in defining the work relationship. *Id.* at 832.

The D.C. Circuit "has suggested in dictum," however, that the *Spirides* test, which was adopted to distinguish between independent contractors and employees, ought not control in "'joint employment' discrimination cases like this one." *Harris v. Attorney General*, 657 F. Supp. 2d 1, 9–10 (D.D.C. 2009); *see also Clayton v. District of Columbia*, 117 F. Supp. 3d 68, 83 (D.D.C. 2015). The D.C. Circuit explained in *Redd v. Summers*, 232 F.3d 933 (D.C. Cir. 2000), that it "has never invoked *Spirides* to resolve an issue of joint employment," and it expressed "doubt whether the *Spirides* test is suited to" that purpose, *id.* at 937–38. Instead, as

this Court has previously observed, the *Browning-Ferris* test is better suited than the *Spirides* test to resolve claims of joint employment. *Clayton*, 117 F. Supp. 3d at 83; *see also Coles v. Harvey*, 471 F. Supp. 2d 46, 50 (D.D.C. 2007) (same). But, even if the *Spirides* test were applicable, the result at this stage of the proceedings would be the same, since the *Browning-Ferris* test "is not terribly distinct from the primary consideration in the *Spirides* test," *Dean v. Am. Fed'n of Government Emps.*, 549 F. Supp. 2d 115, 122 (D.D.C.2008); *see also Harris*, 657 F. Supp. 2d at 10. Both involve a core inquiry regarding the degree to which the purported "employer" or "joint employer" exercised control over the worker's performance and the terms and conditions of his or her engagement.

Here, Plaintiff has not pled facts that, taken as true, would establish that the Administrative Office exercised sufficient control over him to cross the line from contractor to joint employee—under either *Spirides* or *Browning-Ferris*. He asserts that the Administrative Office asked him to conduct all his regular meetings under the name of his predecessor, Dkt. 1 at 3 (Compl. ¶ 12), and pressured him not to report certain alleged security breaches, *id.* at 4 (Compl. ¶ 17). He also alleges that someone named Paul Pollard controlled his key meetings, although the complaint does not make clear whether Pollard is an employee of the Administrative Office, General Dynamics, or some other organization. *Id.* (Compl. ¶¶ 13, 15). Even though these allegations suggest that the Administrative Office exercised some day-to-day supervision over Plaintiff's working conditions, they do not support an inference that the Administrative Office had authority over the terms and conditions of his employment for purposes of the *Browning-Ferris* test or that it could control and direct both the details and the results of his work for purposes of the *Spirides* factors. *See Mack v. Aspen of DC, Inc.*, 248 F. Supp. 3d 215, 219–20 (D.D.C. 2017). Unlike cases in which courts have concluded that a

contracting entity exercised sufficient control over a contractor to qualify as a joint employer, Plaintiff does not allege that the Administrative Office participated in the hiring process, trained him, controlled his schedule, approved his timesheets, or had the power to fire or discipline him. *Contra Young v. Washington Metropolitan Area Transit Auth.*, 2019 WL 2520065, at *4 (D.D.C. Apr. 4, 2019) (authority exercised over plaintiff by "setting her schedule and approving her timesheets and any leave requests, training her, assigning the work she did, [] supervising that work," "and fir[ing] her"); *Coles v. Harvey*, 471 F. Supp. 2d 46, 51 (D.D.C. 2007) (authority exercised over "hir[ing]," "supervis[ion]," and "terminat[ion]"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (authority exercised over "training, supervision and discipline of employees" and "policies and procedures"); *Clayton*, 117 F. Supp. 3d at 84 (authority exercised when defendant "played significant roles in" plaintiff's "hiring and supervision" and "repeatedly threatened her" with termination).

By contrast, the complaint alleges sufficient facts to conclude that General Dynamics did exercise such control. Dkt. 1 at 3 (Compl. ¶¶ 8, 10). General Dynamics (not the Administrative Office) informed Plaintiff that he had been removed from his position and moved to "internal mobility," indicating that General Dynamics had control over his responsibilities and could discipline him, terminate him, or remove him from the Administrative Office contract. *Id.* at 4 (Compl. ¶ 20). Furthermore, when Plaintiff "fe[lt] targeted" or "underpaid" he contacted General Dynamics and not the Administrative Office. Dkt. 1-1 at 2; Dkt. 1 at 13 (Compl. ¶ 10). General Dynamics also determined and paid Plaintiff's salary. *See* Dkt. 1 at 13 (Compl. ¶ 10).

Plaintiff nonetheless insists that he was "a federal employee engaged in work" for the Administrative Office. Dkt. 22 at 17. It is unclear what he means by that. To the extent he intends to suggest that he was *solely* employed by the Administrative Office, that allegation is

implausible and directly conflicts with the allegations in his complaint, including the allegation that he "started a permanent position with [General Dynamics]" in January 2023. Dkt. 1 at 2 (Compl. ¶ 2). If, on the other hand, he intends to allege that he was *jointly* employed by General Dynamics and the Administrative Office, that is a conclusion of law that need not be taken as true.

Even reading Plaintiff's complaint in light of statements included in other filings, *see Brown*, 789 F.3d at 152, he has not alleged facts that would support an inference that he is a joint General Dynamics/Administrative Office employee. His filings contain various conclusory assertions that he is, in fact, a federal employee. *See* Dkt. 39 at 7 ("Plaintiff realleges that he was a federal employee within Title VII's scope."); *id.* ("Plaintiff was not an 'independent contractor' contrary to what Defendant is suggesting."). Beyond those assertions, he points to a handful of additional facts about his employment situation. He says that he was "integrat[ed] into the work processes and team structure of both entities," Dkt. 22 at 19, that he had a "relationship with Thomas Pedicone, who transitioned from a [General Dynamics] employee to a full-time employee of the Administrative Office," *id.* at 20, and that he had a "Government Manager, Troy Pomeroy," who was "an executive level employee" of the Administrative Office, Dkt. 39 at 7–8. He also alleges that he had "a government badge with building access" and "managed almost 2 dozen Government and non-Government employees, working directly with Government co-workers every day, in a fully integrated Government team." Dkt. 39 at 8. Finally, he notes that he "signed a Declaration of Federal Employment," *id.*, and provided a copy of that form, *see* Dkt. 22-1.

But none of this suffices to establish joint employment. Apart from Plaintiff's allegations about his manager, his relationships with various Administrative Office employees do not

establish that those employees (or the Administrative Office generally) exercised control over the terms and conditions of his employment.  Nor does the fact that he was given a government badge have anything to do with such control.  And the "Declaration for Federal Employment" form states directly under the title that "This form may also be used to assess fitness for federal contract employment."  Dkt. 22-1 at 1.  As a result, it adds little to Plaintiff's argument.

The contention that he had a "Government Manager" arguably weighs in Plaintiff's favor, because it does suggest some level of control.  But the degree of control—and the nature of that control—are critical to the relevant analysis, and without that detail, the Court cannot conclude that this generic label is sufficient to "nudge[] [his] claim[]" that he was jointly employed "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  To do so, he would need to provide facts that pertained not just to the Administrative Office's management of his day-to-day tasks, but also to the terms and conditions of his employment.  The Court thus concludes that Nguedi has not alleged facts sufficient to permit a plausible inference that he is a joint employee of General Dynamic and the Administrative Office.  *See Mack*, 248 F. Supp. 3d at 220 ("[Plaintiff] must provide more detail than she has for the Court to [conclude] that the District was her employer for purposes of Title VII liability, particularly when she explicitly alleges that another entity—Aspen—was her employer.").

Even beyond this threshold difficulty, assuming that Plaintiff was jointly employed by General Dynamic and the Administrative Office, his complaint also fails to allege facts sufficient to support a Title VII claim against the Administrative Office.  He does not allege, for example, that the Administrative Office played any role in setting his compensation level or his benefits; to the contrary, he alleges that he raised these concerns with General Dynamic, not the Administrative Office.  Dkt. 1-1 at 2.  Similarly, although he alleges that he was demoted in

retaliation for making inquiries about his salary, he contends that General Dynamics *falsely* placed blame for this move on the Administrative Office. In his words, his General Dynamics supervisor "was lying" when he said that the Administrative Office wanted "to move in another direction" and that, in truth, the Administrative Office "was not trying to go in another direction." Dkt. 1 at 4 (Compl. ¶¶ 20, 22). Thus, even Plaintiff's complaint lays the decision to remove him from his post at the feet of General Dynamics, not the Administrative Office. In short, he fails to identify anything that the Administrative Office did that might plausibly have violated Title VII.

The Court will, accordingly, dismiss Plaintiff's Title VII claims against the Administrative Office.[1]

## B.    Equal Protection Clause and 42 U.S.C. § 1981 Claim (Count II)

Plaintiff's Equal Protection Clause and Section 1981 claims against the Administrative Office also fail as a matter of law. The federal government is entitled to sovereign immunity, which bars claims against it for money damages absent express congressional authorization. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Here, Congress has not authorized suits for money damages against a federal agency under either the Equal Protection Clause or Section 1981.

First, it goes without saying that the Equal Protection Clause does not, standing alone, authorize suits against federal agencies for money damages. To be sure, in enacting 42 U.S.C. § 1983, Congress authorized "an injured person" to recover "money damages if a *state official* violates his or her constitutional rights," but it has not created "an analogous statute for *federal*

---

[1] Given that the Court is dismissing Plaintiff's Title VII claims for failure to establish that he was a federal employee or that the Administrative Office did anything that might have violated Title VII, the Court will decline to reach the Administrative Office's other arguments as to whether Plaintiff had adequately pled that he held a competitive service position, *see* Dkt. 17-1 at 16–18.

*officials.*"  *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (emphasis added).  Nor does the Federal

Torts Claims Act waive sovereign immunity for constitutional torts.  *See Meyer*, 510 U.S. at

477–78.  Finally, although sovereign immunity does not bar suits for constitutional torts brought

against federal officials in their personal capacities, *see Bivens v.  Six Unknown Fed. Narcotics

Agents*, 403 U.S. 388, 390-98 (1971), it does bar suits against federal officials sued in their

official capacities, *see Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) (holding that

sovereign immunity "bar[s] suits for money damages against officials in their *official* capacity

absent a specific waiver by the government" (emphasis in original)), and clearly bars suits

against federal agencies for money damages.  "Sovereign immunity is jurisdictional in nature,"

*Meyer*, 510 U.S. at 475, and, accordingly, suits like this one, which seek money damage from the

federal government without congressional consent, must be dismissed for lack of jurisdiction,

*United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may

not be sued without its consent and that the existence of consent is a prerequisite for

jurisdiction.").

      Plaintiff's Section 1981 claim against the Administrative Office fares no better.  Section

1981 is explicit:  It provides that "[t]he rights protected by this section are protected against

impairment by nongovernmental discrimination and impairment under color of State law."  42

U.S.C. § 1981(c).  The Administrative Office is not, of course, a "nongovernmental" actor, and it

does not act "under color of State law."  Because Section 1981 "does not apply to actions against

the United States," *Brookens v. Solis*, 2009 WL 5125192, at *1 (D.C. Cir. Dec. 9, 2009),

Plaintiff's Section 1981 claim cannot stand.

The Court will, accordingly, dismiss Plaintiff's Equal Protection Clause claim for lack of jurisdiction and his Section 1981 claim against the Administrative Office for failure to state a claim upon which relief can be granted.

## C.    D.C. Human Rights Act Claim (Count VIII)

Sovereign immunity bars any claim under the DCHRA against a federal agency.  *See Burford v. Yellen*, 246 F. Supp. 3d 161, 181 (D.D.C. 2017) (dismissing DCHRA claims because "[t]he D.C. Council, not Congress, enacted the DCHRA, and there is no federal statute that evinces Congress's intent to waive the United States' immunity from suit under the DCHRA" (*quoting Marcus v. Geithner*, 813 F. Supp, 2d 11, 17 (D.D.C. 2011)).  Plaintiff "challenges the notion of sovereign immunity as a defense for the alleged discriminatory actions."  Dkt. 22 at 29.  But sovereign immunity does not depend on the substance of an underlying claim; it depends on whether the United States has waived its immunity from suit for money damages.  *See Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) ("The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity").

The Court will, accordingly, dismiss Plaintiff's DCHRA claim against the Administrative Office for lack of jurisdiction.

## D.    Breach of Contract Claims (Counts VI, VII)

The Administrative Office argues that this Court lacks jurisdiction to consider Plaintiff's breach of contract claim because the damages he seeks exceed $10,000.  Dkt. 17-1 at 25–26.  Under the Little Tucker Act, district courts and the Court of Federal Claims have concurrent jurisdiction over breach of contract claims against the United States when the damages sought are below $10,000.  *See* 28 U.S.C. § 1346(a)(2).  When the plaintiff is seeking more $10,000,

however, the Court of Federal Claims has exclusive jurisdiction. *Id.*; *Kidwell v. Dep't of Army, Bd. for Correction of Mil. Recs.*, 56 F.3d 279, 283 (D.C. Cir. 1995). Here, even though Plaintiff repeatedly alleges that he was earning $10,000 less than other members of his team, the complaint fails to tie this amount to any contractual undertaking; rather, the allegations regarding the pay differential are most clearly related to his discrimination claims. When it comes to his claims for breach of contract, he merely alleges that "Defendants breached the employment contract by failing to provide Plaintiff with the terms, conditions, and compensation as promised or implied in the employment offer and contract." Dkt. 1 at 8 (Compl. ¶ 39).

Because Plaintiff fails to identify the contractual provision, whether express or implied, that Defendants allegedly breached, the Court cannot conclude that his claim exceeds $10,000. But that does little to help Plaintiff, since the complaint fails to set forth a plausible theory of breach of contract. Among other things, Plaintiff never alleges that he entered into an employment contract with the Administrative Office; to the contrary, he alleges that he was hired by General Dynamics to support that company's contract with the Administrative Office. *Id.* at 2 (Compl. ¶ 2). Nor does he allege what contractual terms the Administrative Office allegedly breached. It is not enough to allege in conclusory terms that "Defendants entered into an employment contract" with him and breached that contract by failing to comply with its terms or by failing to treat Plaintiff fairly. *Id.* at 8 (Compl. ¶¶ 38–39, 43–45).

If Rule 8 means anything at all, it requires more than this to state a claim for relief. *See Hildreth v. Obama*, 950 F. Supp. 2d 63, 68 (D.D.C. 2013) (dismissing the case because "the complaint [did] not contain sufficient factual matter to suggest the existence of a contract" with the federal government). Here, the complaint contains nothing more than legal conclusions and "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Because the complaint lacks "factual content" sufficient to allow the Court "to draw the reasonable inference that the [Administrative Office] is liable for" a breach of contract—or even that it was a party to an employment contract—Plaintiff's breach of contract claims against the Administrative Office cannot stand. *Id.*

The Court will, accordingly, dismiss Plaintiff's breach of contract claims against the Administrative Office for failure to state a claim upon which relief can be granted.

**E.    Intentional Infliction of Emotional Distress Claim (Count III)**

As explained above, sovereign immunity bars any claims against the federal government, including federal agencies like the Administrative Office, that are not authorized by statute. *See Meyer*, 510 U.S. at 475. Here, the only federal statute that might even arguably serve that function with respect to Plaintiff's tort claims is the Federal Tort Claims Act ("FTCA"), which waives sovereign immunity for certain tort claims against the United States. *See* 28 U.S.C. § 1346(b)(1). In order to recover under the FTCA, however, a plaintiff must first exhaust his administrative remedies before filing suit in federal court. *See id.* § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (upholding dismissal of FTCA claim when plaintiff failed to exhaust administrative remedies). To do so, a plaintiff must "first present[] [his] claim to the appropriate Federal agency" and wait until it is "finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Unlike some exhaustion requirements, the FTCA's exhaustion requirement is jurisdictional and must be pled by the FTCA claimant. *See Norton v. United States,* 530 F. Supp. 3d 1, 5–6 (D.D.C. 2021); *accord Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).

Plaintiff's complaint fails to include any mention of the Federal Tort Claims Act, nor does it allege that Plaintiff made any effort to exhaust any administrative remedies before

bringing suit.  He alleges neither that he presented his claim to the Administrative Office (or any other agency) nor that he received a denial from that agency in writing.  Nor do any of his other filings fill that gap; he merely asserts, without explanation, detail, or support that "he contends that he has exhausted his claim" for intentional infliction of emotional distress.  Dkt. 22 at 31.  But even then, he fails to say (even in conclusory terms) that he "presented [a] claim" pursuant to the FTCA to an "appropriate Federal agency."  28 U.S.C. § 2675(a).  Because Plaintiff bears the burden of demonstrating that the Court has jurisdiction to consider his claims, more than a conclusory assertion that he "contends" that "he has exhausted his claim" in an opposition brief is required to proceed with this claim.  Moreover, even if the Court were to credit Plaintiff's conclusory assertion, his FTCA claim would fail to satisfy even the most undemanding pleading requirements; the Court is simply left to wonder which federal employee took what action that could possibly be characterized as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community," *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (citation omitted), but that would not fall within the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h).

The Court will, accordingly, dismiss Plaintiff's intentional infliction of emotional distress claim against the Administrative Office for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Administrative Office's motion to dismiss, Dkt. 35, is hereby **GRANTED** and Plaintiff's motion for hearing, Dkt. 44, is **DENIED** as moot.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 3, 2024